# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MERRILL LYNCH, PIERCE, FENNER &
SMITH INC.,

            Plaintiff,

        v.

GIGI JORDAN AND THE HAWK MOUNTAIN
LLC,

            Defendants.

No. 17-cv-49 (RGA)

J.P. MORGAN SECURITIES, LLC.,
JPMORGAN CHASE BANK, N.A., CHASE
BANK USA, N.A., JP MORGAN CHASE &
CO., and ROSE COHEN,

            Plaintiffs,

        v.

GIGI JORDAN,

            Defendant.

No. 17-cv-199 (RGA)

## MEMORANDUM OPINION

Steven T. Margolin, Esq., Gregory E. Stuhlman, Esq., Greenberg Traurig LLP, Wilmington, Del.; Kenneth I. Schacter, Esq., Morgan Lewis & Bockius LLP, New York, N.Y., attorneys for Plaintiff Merrill Lynch, Pierce, Fenner & Smith Inc.

Joseph J. Bellew, Esq., Cozen O'Connor, Wilmington, Del.; Eugene L. Small, Esq., Small & Calvo, New York, N.Y., attorneys for Plaintiffs J.P. Morgan Securities, LLC., JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., JP Morgan Chase & Co., and Rose Cohen.

Elihu E. Allinson III, Esq., Sullivan Hazeltine Allinson LLC, Wilmington, Del.; Daniel J. Kornstein, Esq., Elizabeth Saylor, Esq., Emery Celli Brinckerhoff & Abady LLP, New York, N.Y., attorneys for Defendant.

April $\underline{21}$, 2017

**ANDREWS, U.S. DISTRICT JUDGE:**

This case is about whether a party that chooses to litigate her claims against one group of defendants is barred from arbitrating related claims against a different group of defendants. Presently before the Court are two requests for preliminary injunctions against ongoing arbitrations and a related request for a temporary restraining order. For the following reasons, those requests are denied.

## I. BACKGROUND

Gigi Jordan made many millions in home health care during the 1990s. She now contends her ex-husband and ex-business partner, Raymond Mirra, along with several accomplices, siphoned away much of those millions through fraud. From this basic contention sprung at least two litigations and two arbitrations.

### A. The Fraud Action

On March 9, 2012, Jordan filed a complaint against Mirra in the Southern District of New York claiming he defrauded her. (Fraud Action D.I. 1).[1] That litigation was stayed from May 17, 2012 until February 19, 2015 while Jordan was on trial for poisoning her eight-year-old son. (Fraud Action D.I. 23; 82). In the interim, on December 8, 2014, the case was transferred to the District of Delaware by joint stipulation of the parties. (Fraud Action D.I. 68).

---

[1] There are four relevant District of Delaware dockets. Citations to the docket in *Hawk Mountain LLC v. RAM Capital Group LLC*, Civ. Act. No. 13-2083 will be cited as RICO Action. Citations to *Jordan v. Mirra*, Civ. Act. No. 14-1485 will be cited as Fraud Action. Citations to *Merrill Lynch, Pierce, Fenner, & Smith Inc. v. Jordan*, Civ. Act. No. 17-049 will be cited as ML. Citations to *J.P. Morgan Securities v. Jordan*, Civ. Act. No. 17-199 will be cited to as JPM.

3

Shortly after the stay was vacated, on March 9, 2015, Jordan filed an amended complaint adding three business and thirteen individual defendants. (Fraud Action D.I. 84). One of the added defendants was Patrick Walsh, a broker at Merrill Lynch. On June 5, 2015, Walsh moved to dismiss the complaint for failing to state a claim, or, in the alternative, to compel arbitration. (Fraud Action D.I. 108). Dispositive motions in that case are pending. In particular, the Court is considering whether the claims are time-barred. (*See* D.I. 175 at 2).

On January 27, 2017, Jordan voluntarily dismissed Walsh. (Fraud Action D.I. 188). This dismissal terminated his motion to compel arbitration.

## B. The RICO Action

On December 23, 2013, in the District of Delaware, Jordan[2] filed a Racketeer Influenced and Corrupt Organizations ("RICO") action against eight business and eleven individual defendants. (RICO Action D.I. 1). On January 31, 2014, Jordan amended the complaint, adding two more individual defendants, including Walsh. (RICO Action D.I. 20).

Discovery was conducted in the RICO action starting in January 2015. (*See* RICO Action D.I. 87 (scheduling order); 88 (initial disclosures)). Merrill Lynch and J.P. Morgan Securities ("JPMS") both participated in third party discovery in the RICO action. Merrill Lynch was served with two requests to produce documents,

---

[2] The Hawk Mountain LLC, Michelle Mitchell, and Kim Jordan were also plaintiffs in the RICO action. The Hawk Mountain LLC and Michelle Mitchell are also plaintiffs in the arbitration against Merrill Lynch. Jordan alone is the plaintiff in the arbitration against the J.P. Morgan entities. The Hawk Mountain LLC is a defendant in Merrill Lynch's request for an injunction. For brevity's sake and because there are no unique arguments to The Hawk Mountain LLC, I will reference Jordan only.

information, or objects or to permit inspection of premises and two subpoenas directed to the same. (RICO Action D.I. 98, 99, 127, 128; *see also* D.I. 152 (responding to subpoenas)). Merrill Lynch was also served with and responded to a subpoena to testify. (RICO Action D.I. 326, 332). JPMS was served with two subpoenas to produce documents, information, or objects or to permit inspection of premises. (RICO Action D.I. 151, 159).[3] On January 22, 2015, Magistrate Judge Sherry Fallon entered a protective order that covered confidential documents produced by third parties. (RICO Action D.I. 100). All of this discovery conducted in the RICO action was "deemed to have been completed" in the fraud action. (Fraud Action D.I. 166 at 2).

On June 3, 2016, Judge Fallon issued a report and recommendation recommending that the case be dismissed on statute of limitations grounds. (RICO Action D.I. 457 at 29). On August 31, District Judge Sue Robinson adopted Judge Fallon's recommendation and dismissed the action. (RICO Action D.I. 472). The dismissal is on appeal to the Third Circuit. (RICO Action D.I. 473).

## C. FINRA Arbitration

On October 31, 2016, Jordan, together with The Hawk Mountain LLC and Michelle E. Mitchell, filed a statement of claim against Merrill Lynch, commencing a FINRA arbitration. (ML D.I. 7). FINRA is a regulatory body for the financial industry that also acts as an arbitration forum.

---

[3] JP Morgan Chase also participated in third party discovery. (*See* RICO Action D.I. 94, 122, 124, 160).

5

On December 29, 2016, Jordan filed another statement of claim with FINRA against several J.P. Morgan Chase entities along with one employee, Rose Cohen. (JPM D.I. 7).

## D. Motions for Injunctive Relief

On January 13, 2017, Merrill Lynch moved for a temporary restraining order and a preliminary injunction against Jordan and The Hawk Mountain LLC to halt the ongoing FINRA arbitration. (ML D.I. 1). On January 25, the Court issued a temporary restraining order "to maintain the status quo" and set an expedited briefing schedule on the preliminary injunction request. (ML D.I. 18).

On February 27, J.P. Morgan Securities, LLC. ("JPMS"), JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., JP Morgan Chase & Co., and Rose Cohen filed their own action seeking declaratory judgments that FINRA does not have jurisdiction to arbitrate Jordan's claims against them and that Jordan has waived her right to arbitrate. (JPM D.I. 2). The J.P. Morgan entities have moved for a temporary restraining order and preliminary injunction on the same grounds. (JPM D.I. 4).

For the following reasons, Merrill Lynch's motion for a preliminary injunction (ML D.I. 1) and the J.P. Morgan entities' motion for a temporary restraining order and a preliminary injunction (JPM D.I. 4) are denied.

## II. STANDING

Jordan argues that JPMorgan Chase Bank ("JPMCB"), Chase Bank USA ("CB USA"), and JP Morgan Chase & Co ("JPMCC") lack standing to seek an injunction because they declined arbitration. I agree.

6

Standing to sue is a jurisdictional requirement under Article III of the United States Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must show it has suffered an injury-in-fact. *Id.* An injury-in-fact ensures the plaintiff has "a personal stake in the outcome...." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (internal quotation marks omitted). When a party seeks prospective relief, such as an injunction, standing requires an "injury or threat of injury" that is "real and immediate, not conjectural or hypothetical." *Id.* at 102 (internal quotation marks omitted). "Past exposure to [the challenged] conduct does not in itself show a present case or controversy... if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974) (some alterations omitted)).

JPMCB, CB USA, and JPMCC are not FINRA members. (JPM D.I. 18-3). Thus, they are not compelled by FINRA's rules to participate in a FINRA arbitration. (*Id.*). JPMCB, CB USA, and JPMCC exercised their option to decline arbitration. (*See id.*; *see also* JPM D.I. 18-6, 19 at 5). As they are not currently parties to an arbitration brought by Jordan, they do not have standing to seek injunctive relief against her. Any threat of future arbitration with Jordan is only conjectural. *Compare Lyons*, 461 U.S. at 105 (finding fact that plaintiff had been choked by police in the past insufficient to establish threat plaintiff would be choked in the future).

In arguing they do have standing, JPMCB, CB USA, and JPMCC rely on *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 648–52 (7th Cir. 2014).

7

In that case, the McDonalds, the arbitration plaintiffs, were customers of both JPMCB and JPMS, but brought an arbitration against JPMS and two employees of JPMCB only; JPMCB itself was not a party to the arbitration. The McDonalds held an investment account with JPMCB and a brokerage account with JPMS. The investment account with JPMCB was governed by a contract that not only lacked an arbitration clause, but also had a forum selection clause that required the parties to bring any disputes arising from the contract in a state or federal court in Cook County, Illinois. The crux of the McDonalds' claim in arbitration was mismanagement of the investment account by JPCMB.

The Seventh Circuit found that JPMCB had standing to sue because the arbitration against JPMS centered on a claim arising out of the investment account held with JPCMB. Thus, the arbitration violated the forum selection clause in the contract between the McDonalds and JPCMB. It was the violation of a contractual right that gave JPCMB standing. *See McDonald*, 760 F.3d at 650 ("The McDonalds' attempt to arbitrate appears to have violated the clause of their contract with the Bank, and the Bank's claim of the violation is enough to give the Bank standing to bring this action to enforce the clause.").

JPMCB, CB USA, and JPMCC have not raised any argument that they are seeking to enforce some contractual right they hold. Thus, they do not have standing to seek injunctive relief and are dismissed as Plaintiffs from the suit.

8

## III. INJUNCTIVE RELIEF

Merrill Lynch, JPMS, and Cohen ("the arbitration defendants") ask me to enjoin the ongoing arbitrations against them. JPMS and Cohen ask for an injunction because they claim FINRA lacks jurisdiction. All three arbitration defendants argue that the arbitration should be enjoined because, through the fraud and RICO actions, Jordan has waived her right to arbitrate.

In order for me to grant a preliminary injunction, the arbitration defendants "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the arbitration defendants have failed to prove the first two requirements—likelihood of success on the merits and irreparable harm—I am denying their request for injunctive relief.

### A. Likelihood of Success: FINRA Jurisdiction

JPMS and Cohen argue that FINRA lacks jurisdiction to conduct the arbitration against them. There are two potential bases for FINRA jurisdiction: FINRA Rule 12200 and an arbitration clause in a contract between JPMS and Jordan. JPMS and Cohen argue that both bases for jurisdiction are inapplicable to the arbitration against them; thus, the arbitration is improper and should be enjoined. Because I am ruling that FINRA's jurisdiction under Rule 12200 is for FINRA to decide in the first instance, I find that JPMS and Cohen have no likelihood of succeeding on the merits as to this basis for injunctive relief.

9

JPMS is a FINRA member and Cohen an associated person. (*See* JPM D.I. 5 at 17). FINRA Rule 12200 allows arbitration between "a customer and a member or associated person" if the dispute "arises in connection with the business activities of the member or the associated person...."

JPMS and Cohen argue FINRA jurisdiction is improper because the allegations at issue in the arbitration do not relate to business activities of JPMS and Cohen. The statement of the claim includes allegations related to two loans issued by other J.P. Morgan entities without Cohen's involvement. (*See* JPM D.I. 7). JPMS and Cohen narrowly focus on the loan allegations to argue the claim does not "arise in connection with the business activities" of JPMS and Cohen. What their argument seems to miss is that Jordan's allegations extend to misuse of a brokerage account held at JPMS and of a cover up that Cohen allegedly participated in. (*See id.* at 14–15). Thus, I am dubious of their argument that jurisdiction is not proper under FINRA Rule 12200.

Nonetheless, I am not ruling on whether FINRA has jurisdiction under Rule 12200. That determination is for FINRA to make in the first instance.

In the normal case, where the issue of arbitrability turns on interpretation of a contract, "the question of arbitrability... is undeniably an issue for judicial determination." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). This general rule rests on the principle "that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648 (internal quotation mark omitted). In the

10

normal case, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit [their disputes] to arbitration." *Id.* at 648–49.

This is not the normal case. The arbitrator here derives its authority from JPMS's and Cohen's membership in FINRA, not from a contract. Thus, the normal rule does not apply.

Rather, FINRA is in the best position to interpret application of its own rules to the case at hand. In *Howsam v. Dean Witter Reynolds, Inc.*, the Supreme Court held that the National Association of Securities Dealers was best positioned to apply its internal rule on time limits for bringing a claim. 537 U.S. 79, 81 (2002). The Court explained that "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it." *Id.* at 85. The same is true here.

As to JPMS and Cohen's challenge to the arbitration clause, I decline to reach that issue at this time. In her statement of claim, Jordan asserts there is an arbitration clause in the opening documents for the brokerage account with JPMS. (JPM D.I. 7 at 8). Part of Jordan's allegations are that her signature on those documents was forged. (*Id.* at 14). JPMS and Cohen argue that, because Jordan alleges the agreement was entered into without her knowledge and consent, the contract and arbitration clause are invalid. (JPM D.I. 5 at 15).

If Jordan's signature was, in fact, forged without her knowledge, then the contract would be void and the arbitration clause along with it. *See PHL Variable*

*Ins. Co v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1067 (Del. 2011) ("A court may never enforce agreements void *ab initio*, no matter what the intentions of the parties."). I decline, however, to find that the arbitration clause is unenforceable on allegations alone. Absent fact-finding or a stipulation from JPMS and Cohen that the signature was a forgery, I will wait to address the applicability of the arbitration clause. Since there is a likely independent ground for arbitration, there is no need to consider holding a hearing so that I can decide as a fact whether there is contractual authority for the arbitration.

## B. Likelihood of Success: Waiver by Conduct

All three arbitration defendants assert as a merits contention that Jordan has waived her right to arbitrate her claims against them. Because I find that Jordan did not effect a waiver by conduct, the arbitration defendants have no likelihood of succeeding on the merits as to this basis for injunctive relief.

Federal law favors arbitration. A party, however, can waive her right to arbitrate through her conduct. Generally, this occurs when a defendant is sued, participates in pretrial proceedings, motions practice, and discovery, only to belatedly demand arbitration. In that scenario, courts find defendants have "invoked the litigation machinery," thus waiving any right to arbitrate. *Hoxworth v. Blinder, Robinson, and Co., Inc.*, 980 F.2d 912, 926 (3d Cir. 1992). Finding waiver has occurred "is not favored." *Id*.

"[P]rejudice is the touchstone" of waiver by conduct. *E.g.*, *id.* at 925. In analyzing prejudice, courts have focused on the time, effort, and costs foisted on the party resisting arbitration by the prior litigation and, more specifically, by the

12

conduct in that litigation of the party seeking arbitration. *Id.* at 926 ("[P]laintiffs

devoted substantial amounts of time, effort, and money in prosecuting the

action...."); *see also Nino v. Jewelry Exch., Inc.*, 609 F.3d 191 (3d Cir. 2010) ("DI's

delay caused [Nino] the expense of litigating in court, as well as... making [Nino]

endure [fifteen months] of what would have been (had [DI] succeeded) wasted

litigation." (alternation in original) (internal quotation mark omitted)); *Zimmer v.*

*Cooperneff Advisors, Inc.*, 523 F. 3d 224, 233 (3d Cir. 2008) ("For example, there

may well have been some prejudice to Zimmer who was required to hire (and pay)

an attorney to defend the state suit."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d

207, 224 (3d Cir. 2007).

The Third Circuit has set forth factors to aid in the prejudice analysis. Those

factors are:

> [1] the timeliness or lack thereof of a motion to arbitrate... [; 2] the degree to
> which the party seeking to compel arbitration [or to stay court proceedings
> pending arbitration] has contested the merits of its opponent's claims; [3]
> whether that party has informed its adversary of the intention to seek
> arbitration even if it has not yet filed a motion to stay the district court
> proceedings; [4] the extent of its non-merits motion practice; [5] its assent to
> the [trial] court's pretrial orders; and [6] the extent to which both parties
> have engaged in discovery.

*Ehleiter*, 482 F.3d at 222 (quoting *Hoxworth*, 980 F.2d at 926–27) (alterations in

original). This list is "nonexclusive" and I should consider "the circumstances and

context of th[is] particular case." *Nino*, 609 F.3d at 209.

The arbitration defendants argue that the *Hoxworth* factors weigh in favor of

finding waiver. In doing so, however, the arbitration defendants rely on an

overbroad application of the *Hoxworth* factors to the fraud and RICO actions. The

13

application of those factors to this case leads me to the conclusion that Jordan has not waived her right to pursue arbitration against the arbitration defendants.

i.      *Timeliness*

The timeliness of the effort to arbitrate a dispute in relation to the underlying litigation is the first *Hoxworth* factor. While an important factor, the Third Circuit has warned that "delay alone does not constitute sufficient prejudice to support waiver...." *Ehleiter*, 482 F.3d at 223.

On the one hand, Jordan's initiation of arbitration came long after she commenced the fraud and RICO actions. In that way, her initiation of arbitration is untimely. On the other hand, and more importantly, Jordan's initiation of arbitration was timely because it occurred before she ever engaged in litigation against the arbitration defendants. Thus, this factor weighs against finding waiver.

ii.      *Contest of Merits*

The second *Hoxworth* factor directs me to consider "the degree to which the party seeking to compel arbitration... has contested the merits of its opponent's claims." In a more specific sense, this factor has little application to this case's unusual posture because it assumes litigation between the party pressing arbitration and the party resisting it.

In a broader sense, however, this factor can be styled as asking whether arbitration is a second bite at the apple for the proponent of it. For example, in *Kim v. Dongbu Tour & Travel, Inc.*, the Third Circuit explained the defendant had waived his right to arbitrate after finding it "perfectly clear that [the defendant]

14

s[ought] to have th[e] case arbitrated only if it c[ould not] win it by motion in the District Court or [on appeal.]" 529 F. App'x 229, 235–36 (3d Cir. 2013).

Framed in terms of prejudice to the party resisting arbitration, as that is the focus of the waiver analysis, the question becomes whether that party resisting arbitration has had its legal position placed in jeopardy twice: once in litigation and again in arbitration. The answer here is no. None of the arbitration defendants were sued by Jordan. Thus, the arbitration is the only time *their legal position* has been considered by any tribunal. This factor weighs against finding waiver.

### iii. *Notice*

The third *Hoxworth* factor asks whether the party resisting arbitration had notice that the proponent party would seek arbitration. With notice, a party can conduct their affairs in a way that ameliorates prejudice. On the one hand, Jordan never informed the arbitration defendants that she would seek arbitration and even resisted arbitration when it was sought by Walsh. (Fraud Action D.I. 122; RICO Action D.I. 73). On the other hand, the lack of notice did not prejudice the arbitration defendants because they were not parties to the litigation. This factor weighs against finding waiver.

### iv. *Non-Merits Motion Practice*

The fourth *Hoxworth* factor looks at the extent of non-merits motion practice before arbitration is sought. Any non-merits motion practice engaged in by Jordan could not have prejudiced the arbitration defendants as non-parties. Thus, this factor also weighs against finding waiver.

15

### v. Consent to Pretrial Orders

The fifth *Hoxworth* factor asks whether the party seeking arbitration consented to pretrial orders. As presented in *Hoxworth*, this factor has a similar aim to the engaging in non-merits motion practice factor. *See* 980 F.2d at 926. In that regard, the factor is similarly inapplicable here.

To the extent that consenting to pretrial orders demonstrates an intent to litigate instead of arbitrate, any intent to litigate expressed by Jordan is confined to an intent to litigate against the parties actually sued.

This factor weighs against finding waiver.

### vi. Discovery

The conduct of discovery, the sixth *Hoxworth* factor, can prejudice a party seeking to avoid arbitration in two ways. First, it can benefit the proponent of arbitration (to the detriment of the opposing party) by allowing it access to tools it would not necessarily have in arbitration. *E.g.*, *Zimmer*, 523 F.3d at 233.

Second, it prejudices the party resisting arbitration because conducting and responding to discovery takes significant time, money, and effort. *See Hoxworth*, 980 F.2d at 925–26 (documenting the significant discovery efforts the plaintiff had undertaken before the defendant moved to compel arbitration).

Through third party discovery in the RICO action, Jordan has access to at least some documents from Merrill Lynch and JPMS that would have been unavailable in the arbitration. Additionally, one of Merrill Lynch's employees, Walsh, was deposed.

16

Merrill Lynch was subject to five discovery requests. JPMS was subject only to two subpoenas. A search of the RICO docket turns up no references to discovery requests being served on Cohen at all. While Merrill Lynch and JPMS undoubtedly incurred some expense, that expense in terms of time, effort, and money is slight compared to the expenses incurred by a party. A party must not only defend and produce discovery but, unlike a third party, also must conduct it and craft a discovery strategy. A third party is only involved in the discovery that directly relates to it. A party is mired in the whole of it.

While the discovery that occurred against Merrill Lynch and JPMS weighs in favor of finding waiver, that weight is slight in comparison to this factor's operation in the normal case.

### vii. *Initiation of Litigation*

Another relevant consideration is the fact that Jordan actually initiated litigation. *Zimmer*, 523 F.3d at 232. A party's initiation of litigation suggests an intent to resolve a dispute through litigation instead of arbitration. The initiation of litigation alone, however, is insufficient to find waiver. *Id.*

In this case, Jordan's initiation of litigation may evidence an intent to resolve her claims through litigation. But it only evidences that intent as to the defendants she actually sued. Jordan has only brought arbitration claims against the arbitration defendants. Thus, she has only evidenced an intent to resolve her claims against them through arbitration. This consideration weighs against finding waiver.

17

### viii. *Balancing the* Hoxworth *Factors*

All things considered, the *Hoxworth* factors weigh strongly against finding a waiver by conduct has occurred here. There is some prejudice to the arbitration defendants because they were required to participate in discovery as third parties. That factor, however, is the only one weighing in the arbitration defendants' favor at all. Further, the operation of that factor, the prejudice from engaging in discovery, is slight in comparison to the prejudice experienced by an actual party to the litigation. This showing of prejudice falls far short of that necessary to prove a waiver by conduct has occurred.

### ix. *Privity*

Merrill Lynch has a separate, but related, argument for waiver by conduct. It hitches its waiver claim to its employee, Patrick Walsh. Walsh was a defendant in the fraud and RICO actions. Jordan resists this attempt by arguing that only a party to the litigation can claim waiver by conduct. Merrill Lynch responds by citing to privity and claim preclusion cases.

I doubt that a non-party to a litigation can ever claim waiver by conduct. *See In re Cox Enters., Inc.*, 835 F.3d 1195, 1207 (10th Cir. 2016). Tidy resolution of a sprawling dispute is often not possible. Piecemeal litigation can be required. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) (directing a federal court to compel arbitration over arbitrable state law claims even though there were non-arbitrable federal law claims sharing a common set of facts). A review of the dockets suggests that Walsh was and is the only defendant to move for arbitration in the fraud or RICO actions. It is very well likely that there were no grounds for Jordan

18

to bring an arbitration against the other defendants. Jordan's choice then to litigate against one set of defendants and to arbitrate against another set of defendants is reasonable. Penalizing her for it would be inappropriate.

Even if a non-party could assert waiver by conduct, Merrill Lynch's argument would still fail because Walsh could not make out a waiver by conduct case. On June 5, 2015, Walsh moved to compel arbitration. That motion was still pending when Jordan filed a statement of claim against Merrill Lynch on October 31, 2016, commencing the arbitration Merrill Lynch is seeking to avoid. On January 27, 2017, Jordan voluntarily dismissed Walsh. That dismissal terminated the motion to compel arbitration. Having gotten what he asked for, arbitration, Walsh could not now claim he was prejudiced by it. Thus, even if Merrill Lynch's privity argument is correct, it would be unable to prove the prejudice necessary for me to find waiver by conduct.

Having found that Merrill Lynch, JPMS, and Cohen have no likelihood of success on the merits, I am rejecting their request for preliminary injunctive relief.

## C.    Irreparable Harm

The arbitration defendants have also failed to prove they are likely to suffer irreparable harm absent the grant of preliminary relief. They argue two flavors of irreparable harm they will suffer without an injunction stopping the arbitration.

First, the arbitration defendants argue that the costs and procedures of the arbitration, if allowed to proceed, will irreparably harm them. In particular, the arbitration defendants complain that FINRA has no pleading stage vehicle to dismiss the arbitration on statute of limitations grounds. As I noted earlier, the

19

RICO action was already dismissed as untimely and the Court is currently considering whether to dismiss the fraud action as untimely too.

Second, the arbitration defendants argue that Jordan is violating the protective order in the RICO action by using discovery material in the arbitration, and that violation constitutes irreparable harm.

### i. *Arbitration Costs and Procedures*

I reject the arbitration defendants' first argument for three reasons. First, the expense of arbitration is insufficient to constitute irreparable harm. *522 W. 38th St. N.Y. LLC v. New York Hotel & Motel Trade Council, AFL-CIO*, 517 F. Supp. 2d 687, 688 (S.D.N.Y. 2007) ("Moreover, with arbitration already ongoing, the main injury petitioner points to is economic in nature, i.e., the costs and disruptive effects of arbitration, which can be addressed through non-injunctive relief."); *see Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

Second, Merrill Lynch and JPMS are FINRA members and included arbitration in contracts they drafted. Their preferred vehicle for resolving disputes with customers is through arbitration. Thus, they cannot reasonably complain that the procedures of the FINRA arbitration irreparably harm them.

Third, FINRA has a rule that allows timeliness concerns to be heard at an early stage of the proceeding. FINRA Rule 12206 allows a motion to dismiss if "six years have elapsed from the occurrence or event giving rise to the claim." Merrill Lynch complains that, if dismissal were granted under this rule, Jordan could refile

in court. (ML D.I. 5 at 21 n. 11). If Jordan were to file time-barred claims, however, the appropriate remedy would be a motion to dismiss, not anticipatory injunctive relief.

Thus, the arbitration defendants have failed to show they will suffer irreparable harm from being forced to arbitrate the dispute with Jordan.

## ii. *Violation of the Protective Order*

The arbitration defendants assert that Jordan is violating the protective order entered in the RICO action. Whether a violation has occurred is not germane to whether the arbitration defendants will suffer irreparable harm absent a preliminary injunction. There is, in fact, another remedy available to them. They can move for sanctions and to enforce the protective order.

Thus, the arbitration defendants have all failed to show they will suffer irreparable harm if injunctive relief is not granted at this stage. I am denying their request for preliminary injunctions on that ground as well.

## IV. CONCLUSION

Merrill Lynch's motion (ML D.I. 1) for a preliminary injunction is denied. Having denied the request for a preliminary injunction, the temporary restraining order (ML D.I. 18) is vacated. JPMS and Cohen's motion (JPM D.I. 4) for a temporary restraining order and preliminary injunction is also denied. JPMCB, CB USA, and JPMCC are dismissed for lack of standing. An opinion consistent with this order will follow.